There are several issues in this case, but I think it's obvious from the briefs that there's one issue that's dispositive, or potentially dispositive. And that is the issue of the examining psychologist versus the non-examining psychologist at the state agency who completed an assessment form at the reconsideration stage of the proceedings before the request for hearing is filed. The examining doctor is Dr. Herdes. He was an agency examining doctor. He's the commissioner's expert. He diagnosed Mr. Graham with major depression and gave a detailed assessment of various limitations, defined as fair but meaning seriously limited but not entirely precluded, in ten separate areas. Now, let me emphasize that a person need not be entirely precluded from any work-related activities under the commissioner's regulations. Kennedy Just limited but not precluded? Astrue Seriously limited but not precluded. And the point I wanted to make was sometimes people hear the words not precluded and they think, well, that's okay. No, it's not okay. Kennedy No, it's not okay. A lot of sick people are not entitled to SSI, and that's why not precluded matters so much. Astrue It does. But here's the distinction, two distinctions, if I may. One, the test is whether a person can sustain work-related activities on a regular and continuing basis. This Court said over and over again a person doesn't have to be a basket case to be entitled to disability. And two, and here's what's really important, we have the commissioner's examining psychologist and we have the commissioner's vocational expert who says the limitations set by this examining psychologist preclude all sustained work. So the claimant's case in this matter is built upon the opinions of two of the commissioner's own experts. So that's what's important. Ginsburg Okay, counsel, could you specify in the record your support for those latter two statements? Astrue Tell me what you mean by those latter two statements. Ginsburg You said that the vocational expert and the commissioner's own physician said that the limitations precluded your client from engaging in meaningful work. Astrue Yes. Ginsburg Okay. So tell me where in the record there is support for each of those statements. Let's start with the V.E. The V.E. is found in excerpts of record page 237 going through to page 239. Ginsburg Okay. Let's stop. Tell me the specific language that supports your argument. Astrue The specific language in terms of the hypothetical question to the vocational expert. Ginsburg Well, there were several hypothetical questions weren't there? Astrue Well, the one you asked me to, the one that I'm building my case on. Ginsburg All right. It depends on what hypothetical was asked. Astrue Sure. Well, here's the one that the claimant's attorney asked. He said, you know, we have the good limitations, we have one area of limitations that fluctuates between good and fair, and then the following areas are all seriously limited but not precluded category. Coworkers, public, using judgment, interacting with supervisors, dealing with work stresses, maintaining attention concentration, understanding and remembering and carrying out complex job instructions, maintaining personal appearance, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. And then the question was asked. Ginsburg Are those all of the same things that were found by the physician? Astrue Yes. Ginsburg Nothing added. Astrue Nothing added whatsoever. He's reading from it, basically. Ginsburg Okay. Astrue And then he asked the question. Ginsburg What page are you reading on? Astrue I'm reading on page 238 of the excerpts of record, the transcript of the hearing. Ginsburg There are two numbers on these pages. Astrue Well, you've got to get, yes, Judge. The big number is the transcript number at the district court. Ginsburg Okay. Astrue The one that has the P in front of it is my excerpts of record page number, because I have to repaginate when I compile the excerpts of record. Ginsburg Okay. This is the attorney still talking, then. Astrue He's asking the question of the vocational expert. And the bottom right-hand side of the, excuse me, the bottom half of the page at excerpts 238 is that question where he's going through all of that. And then at 239, he says, would you agree that all work on a sustained, regular and continuing basis would be precluded? And the vocational expert says yes. So that's the commissioner's vocational expert. That's the commissioner's psychologist. And against that, we have the non-examining psychologist. Now, this Court has never ---- The commissioner's own expert agreed with that. Where is that? That is at excerpts of record page 163. That is Dr. Purdy's examination. And he, page 162, he diagnosed with major depression, single episode, moderate to severe without psychotic features, but with agitation. Ginsburg So where does it say there's an inability to perform work? Where is that? Astrue The assessment is at excerpts of record page 163. Ginsburg Right. The point of the opinion, the disability opinion. Astrue And there he's giving those various assessments. I think I understand the point you're making. Ginsburg But that's a little different than saying that the commissioner's own expert agreed that the claimant was unable to perform regular work. I mean, the assessment is one thing. Interpreting it is a different thing. Astrue That's absolutely correct. When I say the commissioner's expert, we've got two here. I'm saying the commissioner's expert, meaning the vocational expert, says those limitations preclude work. Now, this Court in Tackett made it clear that it's the job of the vocational expert to translate functional limitations into the ability to work or not work in terms of sustained capacities. It's not the job of a consultative examiner to render an opinion on the ultimate capability of a person to work or not work. Ginsburg What case says that? Astrue Excuse me? Ginsburg What case says that the consultant examiner cannot render an opinion on disability? Astrue I didn't say that. I said it's the job of the vocational expert. Ginsburg What did you say about the consultant examiner? It's not the job of the consultant examiner to do what? Astrue I didn't say he couldn't do it. I said it's not his job to do it. Okay? Ginsburg So if he does it, the ALJ can rely on it then? Astrue Here's the problem with that. Ginsburg Yes or no? Astrue Yes. But it's not that the fact that the examiner doesn't render an opinion on the ultimate capability of a claimant to work does not take away from the examiner's limitations, because in Tackett, this Court said that it's vocational experts who translate those things. Now, if we ---- Ginsburg But it didn't say that no one else could. Astrue No. That's why I answered your question, yes. Kennedy It's also a matter of degree. As I understand it, the man is not prevented from working by the injuries and the bolt falling on his shoulder. Astrue He's not prevented from doing any work by virtue of the arm injury. Kennedy Any work is what matters. Astrue Correct. Kennedy On the psychiatric stuff, most of your evidence is not by M.D. psychiatrists. It's by people with other degrees, other specialties, such as an E.D.D. Is that correct? Astrue A Ph.D., I think, is Dr. Tangeman. No, you're right. He's an E.D.D. Kennedy It was an E.D.D. It's not the same degree. Astrue Yes, but the commissioner recognizes Ph.D.s and E.D.D.s and psychologists as acceptable medical sources, even though the word medical wouldn't be the word we would probably use in everyday parlance. Kennedy Are we compelled to give the same deference? Astrue Absolutely, yes. Kennedy I thought the word in the deference regulation was physician, but I can't remember for sure. Astrue No, Judge, it isn't. The word in the regulations is medical source, and medical source is defined as including Ph.D.s. I do see a ---- Kennedy And E.D.D. Astrue It says psychologist, actually, Judge, to be precise with my language. It doesn't say Ph.D. or E.D.D. It just says psychologist, and E.D.D. is a psychologist. I see I'm coming up on my time. May I reserve my remainder? Ginsburg I just wanted to get one clarification here. I understand we're talking about 18 months because he was later granted disability? Astrue That's correct. Ginsburg Okay. And it was for the same psychological state? Astrue Yes. The award certificate says he was granted disability because of depression. Ginsburg Okay. Thank you. Astrue Thank you, Judge. Roberts Good morning. My name is Leo Montenegro, appearing for the Appellate Commissioner of Social Security. As this Court has noted already, this case largely involves the evidence of plaintiff of claimant's mental impairments. Claimant originally alleged disability based on the injury to his shoulder. Later on during the disability application process, he also alleged disabling mental problems, depression mostly. The way I see it, it looks as if if you took Dr. Hurdy's conclusions, since they were built into that hypothetical and the V.E. said yes, he's precluded, then that would be the end of the matter. So your defense or the decision of the Social Security Administration rests on the fact that the consulting examiner decided that Dr. Hurdy's conclusions didn't match his underlying findings. Is that correct? Montenegro Well, I think that's partly it, Your Honor. Really at issue here is the conflicting opinions from the different psychologists and the ALJ's resolution of those conflicting opinions. The ALJ was faced with these conflicts, resolved them, and claimant offers a different interpretation. Conflict with Dr. Hurdy's? Well, Dr. Hurdy's, as was discussed earlier, when the vocational expert was questioned about Dr. Hurdy's opinion of limitations, the vocational expert said that it looked like claimant could not do any work with those limitations. However, when presented with the limitations given by Dr. Tangeman, the vocational expert identified jobs that the claimant could do within those limitations. So it really depends on whether the ALJ properly went with Dr. Tangeman over Dr. Hurdy's. So the same limitations, Dr. Tangeman says he can work, Dr. Hurdy says he cannot? I'm sorry, Your Honor? So with the same limitations and the hypothetical, Dr. Tangeman says he can work, Dr. Hurdy says he cannot work? Is that what you just said? Not exactly, Your Honor. Dr. Tangeman's limitations resulted in testimony from the vocational expert that claimant could work. Dr. Hurdy's limitations, when presented to the vocational expert, resulted in testimony that claimant couldn't work. So there's difference in the limitations, not just the difference in the opinions from the limitations? Yes, the opinions as to the limitations. Remind me what the difference is in the limitations. Dr. Hurdy's opined as to various serious limitations. I think the ability was characterized, the ability to perform certain mental related work activities. Just be concrete. What are the differences? Well, it's a bit of a ---- They used words. You can just repeat them. I believe Dr. Tangeman, as summarized by the ALJ, said that claimant was moderately limited in his ability to carry out detailed instructions and moderately limited in his ability to maintain attention and concentration for extended periods. I should add that Dr. Tangeman also indicated some problems with social interactions, but the ALJ questioned the plaintiff's claimant about that specifically. Claimant said that even though he had been alleged that he had been depressed in the past, that didn't stop him from working, that didn't result in any social problems at work, and that claimant himself felt he could do the work identified by the vocational expert without limited social interaction. I don't think you're understanding the point of my question. You're giving an argumentative answer, and I'm looking for facts. And what I want to know is what the differences are. Well, actually, Your Honor, both physicians, both psychologists, filled out checkbox forms, and those are the ---- Look, I'm looking for contradictions in the record so the ALJ can go either way, and if he went that way, there's substantial evidence in the record that supports him. That's your case. So I want to know what contradictions. Counsel, is it fair to say that Dr. Hurdy said that Graham was seriously limited and Dr. Tangerman said he was moderately limited? That's true, Your Honor. Dr. Hurdy, in his checkboxes, checked off that claimant was fair, seriously limited, but not precluded in relating to coworkers, using judgment, functioning independently, behaving in an emotionally stable manner, and relating predictably in social situations and being reliable. Those findings differ from Dr. Tangerman's findings, who essentially said that the claimant was limited only moderately in his ability to carry out detailed instructions and to maintain attention and concentration and some social interactions, which, as I said before, the ALJ clarified by his direct questioning of the claimant. So basically, the doctors disagree on how severe the condition is, and the severity has to be at the higher end that one doctor said instead of the more moderate end that the other doctor said to prevent a person from being able to work. Yes, Your Honor. Is that it? Since Dr. Tangerman is a non-examining physician, what does he base his moderate conclusion on? Dr. Tangerman's opinion was based on his review of the existing evidence at the time, which was since a claimant wasn't receiving any mental health treatment, the only evidence concerning his mental health in the record was Dr. Hurdy's opinion. So Dr. Tangerman's opinion, to some extent, constitutes his interpretation of Dr. Hurdy's opinion, along with the other evidence in the record, which I imagine would also include the fact the claimant wasn't receiving any treatment for any psychiatric problems and was able to work in the past with these alleged mental problems and look for work and so on. I should add that those two opinions were not the only two, Dr. Tangerman's and Dr. Hurdy's opinions, weren't the only two opinions on claimant's mental health. There was also the opinion of Dr. Johnson, another psychologist, who didn't impose any functional limitations. It's not clear whether she intended to or not. But her opinion is significant, as the district court pointed out, because Dr. Johnson expressed that claimant wasn't cooperative with the examination and that he possibly exaggerated his responses. She was the one who performed the psychological testing to see what he could do. Yes, Your Honor. Okay. So essentially there were the three opinions from Hurdy's, Tangerman, and Johnson. Tangerman, if you rely on his opinion, as the ALJ did, that results in a finding of non-disability, and that's supported by Dr. Johnson's opinion, which indicates possible exaggeration. And that's in contrast to Dr. Hurdy's opinion. I hope I haven't confused the psychologists here. I read this right that this claimant had below-average IQ. I don't recall that he had. Okay. No, Your Honor. It may be. I just don't recall. This would seem kind of relevant to one's performance on tests, written or whatever they were. I take it some of these are written tests. For the psychologist, I believe she referred to that when she referred to his, I think she put his lack of motivation to work strenuously on those tests. I think if there were any problems with intelligence or IQ, that would have been covered by the opinions of the psychologist when they were specifically addressing his ability to perform mental work-related activities. Right. Okay. If there are no further questions, Your Honor, I'll just sum up by saying that this is essentially a matter of differing interpretations. And while no – well, since claimant hadn't received any mental health treatment, and there's no opinion of a treating source that would be ordinarily accorded any deference, so it's a matter of these consulting psychologists and who you believe and whether the ALJ properly resolved these conflicts now since they did. As I recall, his claim was based on his shoulder. Yes, Your Honor. His original disability claim was based on his shoulder injury. And while there was some question about the actual mechanism of that problem, I believe that his doctors couldn't quite figure out what the problem was. It's undisputed. The ALJ accepted that claimant does have shoulder problems. And as the district court pointed out, and I believe claimant concedes, that's not really the issue in this case. It's really the resolution of the evidence as to mental health problems. Thank you, counsel. Thank you. Thank you. I just have a couple of quick notes. I want to comment on counsel's mentioning there's no treating source. Here's what the commissioner's regulation says, not my argument, the commissioner's regulation. 20 CFR 404.1527D2. Quote, generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you. So that begs the question. Examining source is different than a treating source. It is. But the point is we don't have a conflict here between a treating and examining versus non-examining. We have a conflict here. He didn't say that. He said there was no treating source. And that's my point. The fact is what we have here is an examining source versus a non-examining source only. That's it. Was he getting treated for his psychiatric problem that he claims? No. He was not. So there's no treating physician for the psychiatric problem. Precisely. And I think that's correct. The statement is correct that there's not a treating source. I just want to make it clear that we're not talking about that kind of a conflict. We're only talking about the conflict between the examining and the non-examining. I want to answer Judge Rustani's question. The IQ was 75. That was Dr. Johnson's testing. I see I've got 11 seconds left, and I don't have anything left to say in 11 seconds. So thank you for your time. Thank you, counsel. Graham v. Barnhart is submitted. Graham v. Astro now. And we'll hear Hughes v. City of Stockton.
judges: Kleinfeld, Rawlinson, Restani